**JEFFERSON COUNTY BOARD OF EDUCATION, Plaintiff–Counterclaim–Defendant–Appellant,**

v.

**Anne BREEN, an individual; Anne Breen as next friend of Alice Breen; Alice Breen, an individual, Defendants–Counterclaim–Plaintiffs Third Party–Plaintiffs–Appellees,**

v.

**ALABAMA DEPARTMENT OF EDUCATION; Wayne Teague in his official capacity as the Superintendent of the Alabama Department of Education, Third Party–Defendants–Appellees.**

No. 87–7625.

United States Court of Appeals,
Eleventh Circuit.

Aug. 29, 1988.

Bishop, Colvin & Johnson, Carl E. Johnson, Jr., Birmingham, Ala., for appellant.

Alabama Disabilities Advocacy Program, Garth A. Corbett, Edward H. Stevens, George W. Harris, Tuscaloosa, Ala., for appellees.

Denise B. Azar, State Dept. of Educ., Office of General Counsel, Montgomery, Ala., for other interested parties.

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa- tion.

Before HILL and HATCHETT, Circuit Judges, and GIBSON *, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

The primary issue in this case is whether Bryce Hospital in Tuscaloosa, Alabama is capable of providing Alice Breen "a free appropriate public education" as provided by the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* (the Act). The district court found that Bryce Hospital lacks the facilities necessary to treat Alice, but that the Ranch Treatment Center in Austin, Texas is capable of providing an appropriate education. For the reasons stated below we affirm.

## BACKGROUND

In November 1974, at age seven, Alice Breen sustained a closed head injury in an automobile accident near Mobile, Alabama. She emerged from the resulting coma with a multitude of physical and emotional problems such as impaired memory, attention, perception, and judgment. Since the accident she has engaged in impulsive behavior, self mutilation, and suicide attempts.

Alice was placed in various public and private schools with marginal success. By the fall of 1979 she began experiencing severe psychiatric problems and had become violent. In September and December 1982 Alice was admitted to the Psychiatric Unit of University Hospital in Birmingham; the December admission was prompted by suicide attempts. From January until August 1983, Alice was under the care of Dr. Otto Eisenhardt at Hillcrest Hospital.

Alice was next treated at the Engel Day Treatment Center in Birmingham, Alabama. Apparently dissatisfied with the program at Engel, Mrs. Breen (Alice's mother) withdrew Alice in November 1983.

In December 1983 and January 1984 Mrs. Breen contacted the Jefferson County Board of Education regarding an appropriate placement for Alice. The Board recommended that Alice be enrolled at Berry High School in Jefferson County and be provided a self-contained classroom with regular classes part-time.

Alice's stay at Berry was short lived, however. She spent from April 9 to April 20, 1983 at Hillcrest Hospital recovering from a suicide attempt. She returned to Berry on April 27 but six days later overdosed on an over-the-counter drug and was admitted to Children's Hospital in Birmingham under the care of Dr. Thomas Vaughan. Alice was discharged on July 9, but readmitted two weeks later. Dr. Vaughan recommended that Alice be placed at the Ranch and on September 17, 1984 she was admitted there.

Over the next fifteen months Alice received therapeutic, educational, and related services seven days per week, twenty-four hours per day. Mrs. Breen's insurance paid for all but $9,715.26 of the costs.

Shortly after Alice enrolled in the Ranch Mrs. Breen met with the Jefferson County School Board to discuss an appropriate placement for Alice. Mrs. Breen rejected the Board's proposal that Alice be enrolled at Gilmore–Bell High School because it did not provide services twenty-four hours per day, seven days per week.

At Mrs. Breen's request a hearing was held to determine whether the Jefferson County Board of Education was obligated to pay for Alice's care at the Ranch or whether by providing instate care the Board could satisfy its duty under the Act to provide an "appropriate education." The hearing officer upheld Mrs. Breen's decision to place Alice at the Ranch, concluding that a residential program was required. The hearing officer's decision was affirmed by a state administrative review officer. The review officer found that "[p]rior efforts to educate Alice in day programs were not successful." Further, "the entire group of services provided at The Ranch Treatment Center is of the type needed for Alice to be educated. The un-severability of Alice's needs met by such services is the reason for concluding that such services are an essential prerequisite for Alice's learning."

In late 1985, while the administrative proceedings were pending, Alice checked out of the Ranch and returned home. Her condition rapidly deteriorated and hospitalization was once again necessary. Alice spent most of the summer of 1986 in Brookwood Hospital and upon discharge became violent toward her mother. Over the next year Alice was frequently in and out of the psychiatric unit of University Hospital in Birmingham.

On September 8, 1986 the Board filed this lawsuit in the United States District Court for the Northern District of Alabama. The Board acknowledged that Alice required residential services, but argued that she should be placed at Bryce Hospital, a state mental hospital in Tuscaloosa, Alabama.

The district court disagreed and ordered the Board to pay Alice's $9,715.26 outstanding balance at the Ranch, to immediately place her at the Ranch, and to provide her with two years of compensatory education beyond her twenty-first birthday.

The district court placed great weight on the opinion of the Director of Neuropsychology at Bryce Hospital, Dr. Goff, who believed that Bryce did not have the facilities to adequately address Alice's problems. Dr. Goff reasoned that Alice's problems require a comprehensive treatment program combining behavioral intervention and cognitive remediation with an educational program.

The district court also considered the opinions of Dr. Julia Hannay, Professor and Director of Clinical Neuropsychology Training at the University of Houston and one of the founders of the Alabama Head Injury Foundation, and Dr. Tom Boll, Professor of psychology and the Director of the Comprehensive Head Injury Center at the University of Alabama in Birmingham. The common thread running through both opinions is that Bryce does not have the residential facilities needed to treat head injured patients such as Alice. Dr. Hannay

believed that Bryce could provide a safe environment for Alice, but it could not treat her problems. Dr. Boll stated that there were no facilities in the entire State of Alabama capable of providing Alice with the care she needs.

## DISCUSSION

The Education of the Handicapped Act was enacted in response to a congressional finding that millions of handicapped children in this country were being denied an appropriate education. *See* 20 U.S.C. § 1400(b) (1982). The Act provides federal aid to state and local agencies which comply with its provisions. In order to qualify for federal assistance the agency must "[have] in effect a policy that assures all handicapped[1] children the right to a *free appropriate public education.*" 20 U.S.C. § 1412(1) (1982) (emphasis added).

The Act defines "free appropriate public education" as:

> special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(18) (1982).

The United States Supreme Court has held that in order to satisfy its duty to provide a free appropriate public education, a state must provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 3049, 73 L.Ed.2d 690 (1982). "It would do little good for Congress to spend millions of dollars in providing ac-

cess to a public education only to have the handicapped child receive no benefit from that education." *Id.* at 200–01, 102 S.Ct. at 3047–48.

■ In addition to a loss of federal assistance, a state which fails to comply with the Act may be subject to civil liability because the "Act establishes an enforceable substantive right to a free appropriate public education ... [and] establishes an elaborate procedural mechanism to protect the rights of handicapped children." *Smith v. Robinson*, 468 U.S. 992, 1010–11, 104 S.Ct. 3457, 3467–68, 82 L.Ed.2d 746 (1984).

This procedural mechanism grants handicapped children or their parents or guardians "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E) (1982). Any party aggrieved by the resulting state administrative findings and decision has the right to file suit in the United States District Court regardless of the amount in controversy. In that lawsuit "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S. C. § 1415(e)(2) (1982).

The standard of review to be used by the district court is somewhat confusing because the statute envisions an independent ruling based on a preponderance of the evidence, with the bulk of the evidence coming from the records of the administrative hearing. In *Rowley* the Supreme Court made it clear that § 1415(e)(2) is not an invitation to the district court to substitute its own judgment on sound educational policy for those made at the state administrative level. 458 U.S. at 206, 102 S.Ct. at

---

**1.** The Act defines "handicapped children" as "mentally retarded, hard of hearing, deaf, speech or language impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disa-

bilities, who by reason thereof require special education and related services." 20 U.S.C. § 1401(1) (Supp.III 1985). The parties do not dispute that Alice is a handicapped child as defined by the Act.

3050. This court has recognized that the role of the district court is simply to *"review* the administrative determinations contemplated by the Act." *Manecke v. School Bd.*, 762 F.2d 912, 919 (11th Cir.1985) (emphasis in original), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

█ The extent of deference to be given the administrative findings of fact is an issue left to the discretion of the district court. In recognition of the unique position in which the district court is placed in these cases,[2] the First Circuit has stated that the district court must consider the administrative findings of fact, but is free to accept or reject them. *Town of Burlington v. Department of Educ., Com. of Mass.*, 736 F.2d 773, 792 (1st Cir.1984), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed. 2d 385 (1985). "[The] findings by the state hearing officer must be reviewed as bearing on the federal right to an appropriate education and must receive the court's specific consideration." *Id.*

The district court in the instant case considered the state administrative officers' findings that the Board's proposed placement is inadequate because Alice needs a residential placement in a facility capable of providing an integrated program of educational and other supporting services. The court also considered the opinions of Drs. Goff, Boll, and Hannay that Bryce lacks the facilities to provide Alice with an appropriate education. The district court further found that the evidence presented by the Board that Bryce was appropriate was outweighed by the testimony of Dr. Goff. In short, the district court weighed all the evidence and found by a preponderance that Bryce was inappropriate and that the Ranch was appropriate.

█ The Board challenges the district court's finding that Bryce lacks the facilities to provide Alice with an appropriate education. The Board has failed, however, to convince us that this finding is clearly

erroneous. In *Rowley*, the Supreme Court stated that an appropriate education includes "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." 458 U.S. at 203, 102 S.Ct. at 3049. Given the opinions of Drs. Goff, Boll, and Hannay that Bryce does not have the facilities to educationally benefit Alice, and the lack of any genuine dispute as to whether the Ranch does have such facilities, we believe that the district court's finding is not clearly erroneous.

The two final issues in this appeal are whether the district court erred in: 1) ordering the Board to reimburse the Breens for the $9,715.26 expended during Alice's September 1984 through December 1985 stay at the Ranch; and 2) ordering the Board to fund an additional two years education at the Ranch beyond Alice's twenty-first birthday.

█ We have little difficulty deciding that the district court correctly ordered the Board to reimburse the Breens for their out-of-pocket expenses. Because the Ranch was ultimately determined to be the appropriate placement for Alice, "[r]eimbursement merely requires the [Board] to belatedly pay expenses that it should have paid all along...." *Burlington School Comm. v. Massachusetts Dep't of Educ.*, 471 U.S. 359, 370–71, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985). Further, we agree with the district court that the equities weigh heavily in favor of full reimbursement.

█ The second issue is closely related to the first in that the district court ordered the two additional years in response to the Board's failure to provide an appropriate education prior to the court's order. Compensatory education, like retroactive reimbursement, is necessary to preserve a handicapped child's right to a free education. Without it, the child's right would depend upon his or her parent's ability to

---

**2.** The First Circuit has referred to the decision of the district court as a "bounded, independent decision[ ]—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponder-

ance of the evidence before the court...." *Town of Burlington v. Department of Educ., Com. of Mass.*, 736 F.2d 773, 791 (1st Cir.1984), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

fund the education during the years of administrative proceedings and federal court litigation. *See Miener by and through Miener v. State of Missouri,* 800 F.2d 749, 753 (8th Cir.1986). Also, providing a compensatory education should serve as a deterrent against states unnecessarily prolonging litigation in order to decrease their potential liability. We believe that the district court correctly ordered the Board to provide Alice with two years compensatory education.

## CONCLUSION

For the above reasons, the order of the district court is AFFIRMED.