**Clifford BURR, by his Parents and Next Friends, Kenneth BURR, Betty Burr, Plaintiffs–Appellants,**

v.

**Gordon AMBACH, As Commissioner of the New York State Education Department, Defendant–Appellee.**

**No. 116, Docket 88–7275.**

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1988.
Decided Dec. 12, 1988.

Ellen M. Saideman, New York City (New York Lawyers for the Public Interest, of counsel), Bruce Loren, Legal Intern, Brooklyn, N.Y. (BLS Legal Services Corp., Federal Litigation Program, Luzmina Gonzalez, Legal Intern, Kathleen A. Sullivan, of counsel), for plaintiffs-appellants.

Martha O. Shoemaker, New York City (Asst. Atty. Gen. of the State of N.Y.,

Robert Abrams, Atty. Gen. of the State of N.Y., Stuart Kaufman, Legal Intern, on the brief, of counsel), for defendant-appellee.

Brown & Wood, New York City (Peter Tufo, Anita Fisher Barrett, of counsel), for The New York Institute for the Educ. of the Blind, amicus curiae.

Before FEINBERG, Chief Judge, and NEWMAN and GARTH,* Circuit Judges.

FEINBERG, Chief Judge:

Clifford Burr, by his parents and next friends Kenneth Burr and Betty Burr, appeals from two orders of the United States District Court for the Southern District of New York, Robert L. Carter, J., dismissing plaintiff's claims under the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq. (hereafter "EHA" or "the Act"), and denying recovery of attorney's fees from the New York State Commissioner of Education, defendant in this case. For reasons given below, with respect to the first order, we reverse the judgment of the district court; with respect to the second order, we dismiss the appeal.

## Background

Appellant Clifford is a severely handicapped young man, now 20 years old. Until four years ago, Clifford attended a private school for blind and retarded youngsters at public expense, in accordance with the state's responsibility under the EHA to provide a "free appropriate public education" to all handicapped youngsters up to the age of twenty-two. See 20 U.S.C. § 1412(1). The school closed in June 1984. Pursuant to his statutory obligation to place handicapped students in schools, N.Y. Educ.L. § 4201(2)(c), the Commissioner referred Clifford to the New York Institute for the Education of the Blind (hereafter "the Institute"), a state-supported school. The Institute rejected Clifford, claiming that Clifford would not benefit from its program because he needed "habilitation,"

or training in life skills, for the mentally retarded and had no academic potential. In notifying the Burrs of Clifford's disqualification for its school, the Institute failed to mention its Frampton Hall program for those with multiple handicaps.

Thereafter, Clifford's parents requested a hearing under 20 U.S.C. § 1415(b)(2), to review the Institute's rejection. The hearing officer, who was designated by the New York State Department of Education pursuant to 8 N.Y.C.R.R. § 200.7(d), decided that Clifford should be placed in the Institute. However, the hearing officer took 13 months from the time the Burrs requested a hearing to reach a decision, despite federal and state regulations requiring that hearings be completed much more promptly. Attributing fault for the delay to himself as well as to both parties, the hearing officer awarded Clifford one and one-half years of compensatory education beyond age twenty-one to make up for the education lost from the time of the closing of Clifford's school in June 1984 until the hearing officer's decision on January 27, 1986. The hearing officer notified both sides of their right to appeal his decision to the Commissioner. See 8 N.Y.C.R. R. § 200.7(d)(1) and 200.5(d).

The Institute appealed to the Commissioner, and Clifford remained out of school during the appeal. On May 20, 1986, the Commissioner affirmed the hearing officer's decision to place Clifford at the Institute, but reversed the award of compensatory education because the EHA does not authorize an award of compensatory education beyond the age of 21. Clifford was admitted to the Institute in June 1986, and is presently a member of its Frampton Hall Program.

Pursuant to 20 U.S.C. § 1415(e)(2), Clifford appealed to the district court in September 1986, claiming that the delays in the hearing process violated his right under the Act to a due process hearing, and caused him to lose nearly two full academic years of "free appropriate public edu-

* Honorable Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

cation." Clifford also requested attorney's fees from the Commissioner pursuant to 20 U.S.C. § 1415(e)(4)(B). The district court, in an opinion dated November 9, 1987, granted the Commissioner's motion to dismiss the due process claim. In December 1987, plaintiff filed a notice of appeal to this court challenging that decision, although no judgment had then been entered. The parties entered into a stipulation on February 2, 1988, which was so ordered by the court, withdrawing the appeal without prejudice to reinstatement under the conditions set forth in the stipulation. On March 9, 1988, the district court denied plaintiff's claim against the Commissioner for attorney's fees, holding that the Institute—not the Commissioner—was the adverse party in the administrative proceedings. 683 F.Supp. 46 (S.D.N.Y.1988). In that opinion, the district judge also granted plaintiff leave to file an amended complaint seeking attorney's fees from the Institute for services in the administrative proceedings, and directed entry, under Rule 54(b) of the Federal Rules of Civil Procedure, of a final judgment for the Commissioner on all of plaintiff's claims against him. That judgment was entered on March 18, 1988, and appellant filed a new notice of appeal shortly thereafter.

### Jurisdiction

The first question that we must decide is whether we have jurisdiction to hear both aspects of this case. When we first considered the case, we thought that, because of the complicated procedural history set forth above, there might be a jurisdictional problem based on lack of timeliness with respect to the due process issues decided in the November 9 order. We therefore asked the parties to brief those issues as well as the propriety of the Rule 54(b) certification. After further consideration, however, we conclude that we do have jurisdiction over the due process issues.

■ The question whether we have jurisdiction over the attorney's fees claim requires further discussion. The Commissioner argues that the district court abused its discretion in entering judgment with respect to plaintiff's claim for fees against him and in certifying for appeal the attorney's fees issue pursuant to Rule 54(b). Accordingly, the Commissioner asks us to dismiss that portion of the appeal. A district court's exercise of discretion in certifying a claim under Rule 54(b) is reviewable by this court, *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956), and if the district court abused its discretion, then this court is without jurisdiction to hear the appeal, *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir.1978). One requirement of a proper Rule 54(b) certification is a statement of reasons explaining why "there is no just reason for delay"; mere repetition of the conclusory language from the Rule will not suffice where the justification for the certificate is not apparent. See *Arlinghaus v. Ritenour*, 543 F.2d 461, 463–64 (2d Cir.1976); *Gumer v. Shearson, Hammill & Co., Inc.*, 516 F.2d 283, 286 (2d Cir.1974). In this case, even though the attorney's fees issue against the Institute will still be tried in the district court, the district judge gave no adequate explanation as to why the fees issue as to the Commissioner should be certified.

■ We have often said that certification under Rule 54(b) should not be made routinely or as an accommodation to counsel. See *Brunswick*, 582 F.2d at 183. If plaintiff would suffer hardship or injustice if he had to try his claim against the Institute before appealing denial of his claim for fees against the Commissioner, then certification was appropriate. See *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 941 (2d Cir.1968). But we do not see how deferral of an appeal regarding the attorney's fees claim against the Commissioner harms plaintiff. Plaintiff is limited to a single recovery of attorney's fees in this case; if he recovers from the Institute, then there will be no need for an appeal against the Commissioner. Where there is a single claim for relief, certification under Rule 54(b) is improper, *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976); *Rabekoff v. Lazere & Co.*, 323 F.2d 865, 866 (2d Cir.1963), and in this case, plaintiff

has only one claim for attorney's fees, and will be satisfied if he prevails against either party. As this court said in *Arlinghaus*, "the mere existence of multiple parties and the dismissal of some do not afford sufficient warrant for entry of final judgment under Fed.R.Civ.P. 54(b) ..." 543 F.2d at 463. A decision now on plaintiff's appeal on the claim against the Commissioner for fees may prejudice the Institute, which is before us only as amicus curiae, and not as a party. *Gumer*, 516 F.2d at 286. It would be most economical and fair for us to wait and determine the respective rights of all three interested parties at one time. For all of these reasons, we believe that the district judge exceeded his discretion in concluding that the attorney's fees issue vis-a-vis the Commissioner should come to this court before the district court determines the same issue against the Institute. We agree with the Commissioner that the Rule 54(b) certification was improvidently granted in this respect, and we lack jurisdiction to entertain the fees order.

■ On the other hand, we do have jurisdiction to decide the merits of the due process claim and the appropriate remedy for a violation. There is no reason to delay the appeal of the order concerning the compensatory education issue. That issue is completely separate from the attorney's fees claim to be litigated against the Institute in the district court. In addition, Clifford and his family would suffer serious hardship if the compensatory education claim were not determined now because they would not know until after the fee litigation ends if they must find adult placement for Clifford in anticipation of his fast-approaching twenty-first birthday. Even if the attorney's fees issue is eventually appealed to this court, entertaining an appeal on the merits of the due process claim now will not waste judicial resources because there will be no duplication of the substantive issues raised in that appeal on a later appeal concerning fees. We therefore turn to the merits of the due process claim.

## Discussion

Appellant claims that his due process rights were violated by the delays in deciding his case, and argues that he should receive compensatory education to make up for educational time lost as a result of such delays. He also contends that the appeal taken by the Institute to the Commissioner conflicted with the EHA, and was therefore invalid. The Commissioner responds that the delays did not constitute a due process violation and that the appeal was proper, that remedies for violations of the EHA cannot continue beyond a child's twenty-first birthday and that compensatory education is an inappropriate remedy here, in any event, because it is barred by the eleventh amendment.

Turning to Clifford's argument of undue delay, it is unclear whether he is claiming only a violation of the EHA or a constitutional claim of denial of procedural due process, or both. Since the statute refers to the hearing that Clifford received as an "impartial due process hearing," appellant's merger of the two concepts is understandable. Nevertheless, a statutory violation does not necessarily offend the Constitution. In addition, following well-recognized doctrine, we will consider the constitutional claim only if it is necessary to do so. As will be seen below, it is not.

Federal regulations pursuant to the EHA state that the parents of a handicapped child have a right to a determination by a hearing officer within 45 days after receipt of a request for a hearing. 34 C.F.R. §§ 300.506 and 300.512. Despite this clear command, the hearing regarding Clifford did not even commence until over four months after the request for it, and the hearing officer's decision came over a year after the request. Obviously, the federal regulations were grossly violated in this case.[1] As the Commissioner noted, fault

---

1. The New York regulations were also violated. 8 N.Y.C.R.R. § 200.5(c)(10) provides:

    The impartial hearing officer shall render a decision, and mail a copy of the decision to the parents and to the board of education, not later than 45 calendar days after the receipt by the board of education of a request for a

for the delay was completely attributable to the hearing officer, and appellant should not be forced to suffer the consequences of it. In most cases, a lengthy hearing would not be as damaging to a handicapped child as it was in this case, because normally the "stay-put" provision of the Act, 20 U.S.C. § 1415(e)(3), would keep a child in his prior placement until proceedings are concluded.[2] In this case, however, Clifford had no prior placement because his former school had closed, and consequently, he was denied an appropriate education during pendency of the proceedings, the precise unfortunate result that the "stay-put" provision was designed to prevent. We have no doubt, therefore, that Clifford was injured by the hearing officer's failure to comply with the regulations, and that he has stated a claim cognizable under the Act.

■ We also believe that Clifford was injured by the extra three-month delay caused by the Commissioner's review of the hearing officer's decision, and that such review itself failed to comply with the requirements of the EHA. The relevant portion of the EHA provides:

§ 1415 Procedural safeguards

. . . . .

(b)(2) Whenever a complaint has been received ... the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

(c) If the hearing required in paragraph (2) of subsection (b) of this sec-

tion is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. . . .

(e)(1) A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. . . .

(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States. . . .

Thus, a hearing under this section may be conducted by the "State educational agency" or by a "local educational agency" or an "intermediate educational unit." In the latter two instances, subsection (c) provides for an appeal to the state educational agency, a two-tier administrative review. However, the statute does not provide for such an appeal when the initial determination is made by a hearing officer designated by the state educational agency. When that occurs, subsections (e)(1) and (e)(2) read together provide that the hearing officer's decision is final, a one-tier administrative review. In this case, only a one-tier review was appropriate because Clifford's case was heard by a hearing officer designated by the state educational agency. Therefore, allowing the Institute to appeal to the Commissioner was contrary to the EHA.

hearing or after the initiation of such a hearing by the board.

**2.** The section reads:

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child

shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

It is true that the New York State regulations at issue in this case provided for an appeal by a party to the Commissioner. 8 N.Y.C.R.R. § 200.7(d)(1) and 200.5(d). However, this court has previously expressed its doubt as to the validity of one aspect of the New York review procedures. In *Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir.), cert. denied sub nom. *Doe v. Sobol*, —— U.S. ——, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988), we said that the Commissioner's review in that case, which subjected the parties to an extra procedural step not required by the EHA, seemed inconsistent with the finality provision of § 1415. It is true that our criticism there was directed at a state regulation allowing the Commissioner to review a decision on his own initiative, even if the parties did not appeal. Nevertheless, that expression of concern over unnecessary review seems applicable here. Cf. *Helms v. McDaniel*, 657 F.2d 800 (5th Cir.1981), cert. denied, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). In *Helms,* the court said that because of the state board's power to reject the results of the hearing, "the entire system of procedural safeguards is nullified at a single stroke." Id. at 806. Similarly, the United States Department of Education has warned the New York Department of Education that its plan might not be approved if changes were not made, advising the State that: "In order to meet the requirements of the EHA, New York must institute procedures that insure that ... [w]hen hearings concerning 4201 students are conducted by the [State Educational Agency], the hearing officer's decision is final."

Appeal to the Commissioner was also improper because the statute provides that a proper review at the state level must be impartial. 20 U.S.C. § 1415(c). The Commissioner does not satisfy the impartiality requirement because he has extensive responsibilities and is integrally involved with the operation of state-supported schools such as the Institute. Indeed, his responsibilities for the Institute are specifically spelled out by statute. See N.Y.Educ.L. § 4201. The Conference Committee on the EHA wrote: "no hearing may be conducted by an employee of the State ... involved in the education ... of the child. The conferees have adopted this language to clarify the minimum standard of impartiality which shall apply to individuals conducting due process hearings *and individuals conducting a review of the local due process hearing."* S.Conf.Rep. No. 455, 94th Cong., 1st Sess, 49, reprinted in 1975 U.S. Code Cong. & Admin.News 1425, 1502 (emphasis added). Relying on this legislative history, the weight of authority has supported an interpretation of the impartiality requirement barring employees of the state educational agency from conducting reviews involving state-sponsored schools. See *Muth v. Central Bucks School Dist.,* 839 F.2d 113, 123 (3d Cir.) (citing cases), cert. granted sub nom. *Gilhool v. Muth,* —— U.S. ——, 109 S.Ct. 52, 102 L.Ed.2d 30 (1988). But see *Victoria L. v. District School Board,* 741 F.2d 369 (11th Cir.1984). For both these reasons, we conclude that the New York procedures in effect during administrative review of this case were not consistent with the Act.

The Commissioner argues that appellant waived his right to object to review by the Commissioner by failing to press the point before him. Normally, exhaustion is required in actions brought under the EHA. See *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir.1981). But, exhaustion of administrative remedies is not necessary where it would be futile. See *Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988); *Riley v. Ambach*, 668 F.2d at 640–41. We are convinced that exhaustion would have been futile in this case. The Commissioner argues to us that duly-passed State regulations required him to review the hearing officer's decision. Under these circumstances, there is no doubt that he would have held that the review procedure was permissible if the issue had been raised before him. We conclude, therefore, that the decision of the Commissioner should be set aside and the decision of the hearing officer reinstated. This, in effect, makes the hearing officer's decision the State's "final administrative decision" under the EHA. See *Antkowiak,* 838 F.2d at 641. We turn now to the issues

raised by the relief ordered by the hearing officer.

As noted above, the hearing officer awarded Clifford one and one-half years of compensatory education to make up, at least in part, for the time that Clifford had wrongfully been denied placement in the Institute. The district judge reversed the award of such relief because he interpreted the protections of the EHA to end at the age of twenty-one, whereas the relief granted by the hearing officer would extend beyond Clifford's twenty-first birthday. Appellant argues that the district court erred in this respect.

It is true that a handicapped child does not have a right to demand public education beyond the age of twenty-one. Nevertheless, we believe that Clifford is entitled to a remedy for deprivation of the right that the statute clearly provided him —a free appropriate education between the ages of three and twenty-one, 20 U.S.C. § 1412(2)(B). Section 1415 of the EHA authorizes a district court to award "such relief as the court determines is appropriate." In some circumstances, the scope of the remedy can extend beyond the scope of the original right. See *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). "[I]t is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946) (footnote omitted). And, in *School Comm. of the Town of Burlington v. Dept. of Educ.,* the Supreme Court made clear that "equitable considerations are relevant in fashioning relief." 471 U.S. 359, 374, 105 S.Ct. 1996, 2005, 85 L.Ed.2d 385 (1985). We do not believe that Congress intended to create a right without a remedy. If, in this case, we do not allow an award of compensatory education, then Clifford's right to an education between the ages of three and twenty-one is illusory. Clifford cannot go back to his previous birthdays to recover and obtain the free education to

which he was entitled when he was younger.

Furthermore, under the EHA a parent can enroll a child in a private placement and then recover the tuition paid by the parent during the proceedings against the school board, if the proceedings ultimately establish that the parent's placement was appropriate. *Burlington,* 471 U.S. at 369, 105 S.Ct. at 2002. If that is so, then a child should not be wholly deprived of education because his parents could not afford to pay for an appropriate education at a private school while waiting for the state or local agency to litigate the issue of a proper placement. The Eighth Circuit, in approving the remedy of compensatory education, said, "[w]e are confident that Congress did not intend the child's entitlement to a *free* education to turn upon her parent's ability to 'front' its costs." *Miener v. State of Mo.,* 800 F.2d 749, 753 (8th Cir.1986) (emphasis in original). Administrative and legal proceedings are often lengthy, and a person who prevails at the end of such proceedings should be able to obtain what the proceedings establish he was entitled to when they began. Clifford should not lose the education to which he was entitled at the time his parents requested a hearing under the Act because the hearing was protracted. The Institute was mistaken when it decided that its program was inappropriate for Clifford—as the administrative decisions show—and that mistake should not cost Clifford one and one-half years of education to which he was entitled.

Finally, the Commissioner argues that this court cannot award the compensatory education ordered by the hearing officer because such relief is barred by the eleventh amendment. Appellant counters that Congress abrogated the states' eleventh amendment immunity in passing the Act, and that, in any event, the remedy Clifford seeks is purely prospective and thus does not violate the amendment. Although our opinion in *Counsel v. Dow,* 849 F.2d 731, 736–37 (2d Cir.1988) indicates receptivity to the argument that the states' eleventh amendment immunity was abrogated by enactment of the EHA, we express no opin-

ion on the issue, and recognize that the circuits are split on it. Compare *Muth v. Central Bucks School Dist.*, 839 F.2d 113, 128 (3d Cir.1988) with *Gary A. v. New Trier High School Dist. No. 203*, 796 F.2d 940, 944 (7th Cir.1986) (per curiam). The Supreme Court has granted certiorari in *Muth* to resolve this conflict. *Gilhool v. Muth*, — U.S. —, 109 S.Ct. 52, 102 L.Ed.2d 30 (1988). Nevertheless, we believe that it is possible to reinstate the relief fashioned by the hearing officer without addressing the eleventh amendment issue. This panel is merely vacating the decision of the Commissioner, and reinstating the decision of the hearing officer. The hearing officer is a decisionmaker designated by the State and is not constrained by the eleventh amendment. Therefore, we do not implicate the eleventh amendment by expunging the bar to his decision. In addition—although not essential to our holding—we believe that the mandatory injunction awarded Clifford in this case is purely prospective in nature, and any effect on the state treasury is ancillary to such relief and therefore permissible despite the eleventh amendment. See *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974).

Clifford has been at the Institute since June 1986, and, under the district court's decision, would have remained there until the end of this academic year in June 1989. Although Clifford will turn 21 on December 30, 1988, the hearing officer's decision, which we reinstate here, directs that Clifford remain in the Institute until the end of the 1989–90 school year. We believe that this result best furthers the intent of Congress to provide a free, appropriate education to all handicapped children.

We therefore reverse that part of the judgment that dismissed the due process claim, and remand to the district court with instructions to vacate the decision of the Commissioner and reinstate the decision of the hearing officer. We also dismiss the appeal from that part of the judgment that dealt with the issue of attorney's fees. In view of the extensive delays in this matter, the mandate shall issue one week from the date of this opinion. Appellant may recover his costs related to the appeal of the due process order. No costs are awarded with respect to the appeal of the fees order.