UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 93-1414

 KARL PIHL, ET AL.,

 Plaintiffs, Appellants,

 v.

 MASSACHUSETTS DEPARTMENT OF EDUCATION, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Douglas P. Woodlock, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Barbadoro,* District Judge. 
 

 

 Robert G. Burdick with whom Darryl J. Dreyer and Louis Aucoin
 
were on brief for appellants.
 Regina Williams Tate with whom Lorna M. Hebert was on brief for
 
appellees.

 

 November 16, 1993

 

 

*Of the District of New Hampshire, sitting by designation.

 COFFIN, Senior Circuit Judge. Plaintiffs Karl and Diane
 

Pihl filed this lawsuit in 1987, alleging that defendants

Massachusetts Department of Education, Lowell School Committee,

City of Lowell and Lowell Special Education Administrator George

Tsandikos denied educational services due Karl as a disabled

child. They now appeal from a district court order dismissing

their complaint for failure to state a claim upon which relief

could be granted, presumably because moot, since the challenged

educational plan had expired four years earlier, and Karl had

since passed the age of entitlement for services. We conclude,

after review of the authorities, that the Individuals with

Disabilities Education Act (IDEA)1 empowers courts to grant a

remedy in the form of compensatory education to disabled students

who are beyond the statutory age of entitlement for special

education services, and that Karl Pihl has alleged facts which,

if proven, state a claim for relief. We therefore reverse the

district court's decision to dismiss, and remand for

determination of the merits of his claim.

 I. Factual Background2
 

 

1The IDEA was formerly known as the Education of the Handicapped
Act (EHA). See Pub. L. 102-119, 25(b), Oct. 7, 1991, 105 Stat.
 
607 (substituting "Individuals with Disabilities Education Act"
for "Education of the Handicapped Act"). Except when reciting
the history of the case, or when quoting decisions which cite to
the EHA, the parties cite to the IDEA in their briefs, and we
join them in doing so.

2These facts are drawn from the three volume Administrative
Record filed by the parties in the district court on September 9,
1987, and the pleadings filed in this case. 

 -2-

 Plaintiff Karl Pihl is a twenty-seven-year-old man who is

emotionally disturbed and retarded, and who suffers from profound

hearing loss and speech deficiencies. Karl began receiving

special education services at the age of four, and attended a

number of different programs over the years. The local school

system was obligated by state and federal law to provide these

services to him. See infra at 7. During the 1983 school year,
 

Karl participated in a residential/educational program for multi-

handicapped deaf students at the Perkins School for the Blind,

but was terminated due to aggressive behavior. He was placed at

the Lighthouse School, a private day facility, on an interim

basis, until an appropriate residential program could be found.

In June 1985, dissatisfied with the educational services Karl was

receiving at the Lighthouse School, Karl's mother Diane removed

him from school and kept him at home, under the care of two

twenty-four hour attendants. While the Pihls paid for twenty-

four hour care, the school system held his place open at the

Lighthouse School, continuing to search for an appropriate

program, or ways to adapt the Lighthouse School program to meet

Karl's needs.

 In 1986, when Karl was nineteen, his mother requested a due

process hearing before the Board of Special Education Appeals

(BSEA) to review her claim that Karl was not receiving the

educational services to which he was entitled by law. Following

the hearing, held on July 15, 1986, Mrs. Pihl and the Lowell

Public Schools signed a consent decree requiring the school

 -3-

district to provide interim services to Karl while an appropriate

residential placement was sought.3 The interim agreement was to

end on November 30, 1986, or earlier, if Karl were placed in a

residential program acceptable to his parent, or ordered by a

hearing officer, or if the agreement was terminated by order of

the hearing officer. The hearing officer was to retain

jurisdiction, and the hearing would reconvene if Lowell had not

presented a program willing to accept Karl by that date. The

hearing also would reconvene at either party's request, or if

Diane Pihl were to reject a proposed program.

 On January 28, 1987, the hearing was reconvened on

plaintiffs' motion, and the Massachusetts Department of Education

(DOE) was joined as a party. Plaintiffs sought an order that an

appropriate program be created for Karl, because no existing

appropriate educational facility had been found for him. The

BSEA issued an order the next day, January 29, requiring Lowell

to create a home-based program. The hearing officer also noted

an agreement by the parties that Mrs. Pihl would receive monies

due her from Lowell as a result of payments made pursuant to the

consent decree. The BSEA deferred decision on five issues,

including: whether service delivery pursuant to the consent

decree should be adjudicated inadequate and inappropriate; and

 

3 The consent decree specifically stated that Mrs. Pihl did not,
by this agreement, admit that the interim services provided
pursuant to the decree were sufficient or adequate to fulfill
Lowell Public Schools' obligations under state and federal law.

 -4-

whether Karl was entitled to compensatory services for two years

following his 22nd birthday. 

 Two weeks later, the school district filed a motion for

reconsideration, indicating that it had found a residential

placement for Karl at the Brown School in Austin, Texas. The

same day, the plaintiffs filed this lawsuit, seeking to compel

the defendants to provide Karl with an appropriate education, in

accordance with the BSEA's January 29 decision. The BSEA granted

the motion for reconsideration, and, following a five day

hearing, ruled that the program proposed by defendants was an

appropriate placement for Karl, and ordered Lowell to prepare an

individualized educational program (IEP) for Karl reflecting this

placement.4 

 On May 11, 1987, plaintiffs filed an amended complaint

alleging causes of action under the Education of the Handicapped

Act (EHA), 20 U.S.C. 1401-1415, and parallel provisions of

Massachusetts law, Mass. Gen. L. Ch. 71B. They claimed that Karl

had never been provided with an appropriate IEP; that except for

 

4 The IEP is a comprehensive written statement, developed jointly
by the child's parents, the school district, and, where
appropriate, the child, which outlines the child's special
educational needs, and the specially designed instruction and
services to be provided by the school system to meet those needs.
20 U.S.C. 1401 (a)(20); 34 C.F.R. 300.340, 300.344, 300.346;
603 Code Mass. Regs. 28.314.0, 28.322.0. The IEP must be
reviewed, and, where appropriate, revised, at least once a year,
in order to ensure that local agencies tailor the statutorily
required "free appropriate education" to each child's unique
needs. Honig v. Doe, 484 U.S. 305, 311 (1988); 20 U.S.C. 
 
1413(a)(1,11), 1414(a)(5); 34 C.F.R. 300.343; Mass. Gen. L. Ch.
71B, 3.

 -5-

a few weeks of intermittent tutorial services, he had been

without an IEP, or any education whatsoever, for at least two

years; and that the Brown School placement was inappropriate and

in violation of state law, because of its great distance from the

Pihls' home, its restrictive (hospital-based) nature, and the

fact that it was not approved by Massachusetts or Texas for

education of the deaf, due to the lack of properly certified

personnel. Plaintiffs sought a preliminary injunction requiring

Lowell to maintain interim services until resolution of the

dispute; an injunction against the Brown School placement that

would require the defendants to provide an appropriate education

in the least restrictive setting as close as possible to home; an

injunction requiring compensatory education; an order for payment

of out-of-pocket educational, legal, and expert expenses and

costs; and all other forms of relief that the court deemed just.

 On May 18, 1987, the district court dismissed plaintiffs'

section 1983 claim, since plaintiffs' exclusive avenue for appeal

and relief was provided by the IDEA. Nearly six years later,5

on March 9, 1993, another district court judge allowed

defendants' second motion to dismiss. In a margin order, the

court stated that plaintiffs had failed to show "entitlement to

any relief this court could properly grant." The district court

did not elaborate on the reasons for its decision. It apparently

 

5The case was initially set for trial on September 28, 1987, but
was postponed due to the withdrawal of plaintiffs' counsel.
Except for two pro se motions made by plaintiffs in 1987 and
1988, no further action was taken on this case until November
1991, when a magistrate judge convened a status conference.

 -6-

adopted, however, the defendants' position that plaintiffs'

complaint was moot because the challenged IEP had expired four

years earlier, and because Karl was beyond the age of entitlement

for special educational services under the IDEA.6

 On this appeal, plaintiffs address only their claim for

compensatory education. They contend that, if Karl demonstrates

that defendants failed to provide him with appropriate

educational services during the challenged period, he is now

entitled to compensatory services, regardless of his age.

Although they acknowledge that the BSEA has not rendered final

decisions on the appropriateness of services provided during some

of the contested period, they argue that they should be excused

from the usual exhaustion requirement. Defendants continue to

argue that this case is moot, because the challenged IEP expired

over five years ago, and because Karl is beyond the age of

entitlement for services under the Act. 

 When evaluating a motion to dismiss under Rule 12(b)(6), we

take the well-pleaded facts as they appear in the complaint,

extending plaintiff every reasonable inference in his favor.

Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir.
 

1992). We begin with a review of the statutory backdrop.

 II. Discussion
 

 A. Statutory Framework
 

 

6The court apparently gave some significance to the earlier
dismissal, noting that "defendants' earlier motion to dismiss . .
. was previously allowed on May 18, 1987." That decision,
however, had dismissed only the section 1983 claims. 

 -7-

 The IDEA requires states, as a condition of accepting

federal financial assistance, to ensure a "free appropriate

public education" to all children with disabilities. 20 U.S.C.

 1400(c), 1412(1). In Massachusetts, in accordance with the

state's responsibility under the Act, disabled children remain

eligible for special education services up to the age of twenty-

two, provided they have not yet attained a high school diploma or

its equivalent. Mass. Gen. Laws Ch. 71B, 1, 3. 

 The Act imposes extensive procedural requirements on

participating state and local agencies to safeguard a disabled

student's right to a free appropriate public education. 20

U.S.C. 1401(a)(20); 1412(2,4,5,7); 1415(a,b); Board of
 

Education of Hendrick Hudson Central School District v. Rowley,
 

458 U.S. 176, 182-84 (1982). These procedural safeguards

"guarantee parents both an opportunity for meaningful input into

all decisions affecting their child's education and the right to

seek review of any decisions they think inappropriate." Honig v.
 

Doe, 484 U.S. 305, 311-12 (1987); see also Burlington School
 

Committee v. Mass. Dept. of Ed., 471 U.S. 359, 368 (1984).
 

 The IEP is the primary safeguard, Honig, 484 U.S. at 311;
 

Burlington, 471 U.S. at 368; 20 U.S.C. 1401 (a)(20); 34 C.F.R.
 

 300.346 (1992); Mass. Gen. L. ch. 71B, 3, and parents have a

right to an "impartial due process hearing" to resolve any

complaints about a child's IEP. 20 U.S.C. 1415(b)(2). In

Massachusetts, this function is performed by the BSEA. Mass.

Gen. L. ch. 15, 1M (West Supp. 1993). The BSEA's decision is

 -8-

reviewable in either state or federal court, which tribunal has

broad discretion to grant appropriate relief. 20 U.S.C. 1415

(e)(2); see Burlington, 471 U.S. at 369.
 

 We now proceed with a general discussion of the availability

of compensatory education under the IDEA. We next discuss the

availability of this type of relief following the statutory age

of entitlement.

 B. Availability of compensatory education under the Act
 

 In this case, the Pihls claim that there was no appropriate

IEP for substantial periods of time, beginning from a time before

Karl's removal from the Lighthouse School in June 1985. They

contend that the Supreme Court's decision in Burlington School
 

Committee v. Mass. Dept. of Ed., 471 U.S. 359 (1984) establishes
 

that a student who fails to receive appropriate services during

any time in which he is entitled to them may be awarded

compensation in the form of additional services at a later time.

Plaintiffs claim that Karl lacked an appropriate IEP, and thus

adequate educational services, beginning with the period before

his removal from the Lighthouse School in 1985, and through his

last school year of eligibility in 1987-1988. They claim that

even though he is beyond the statutory age of entitlement, Karl

is still entitled to future services to make up for the school

district's failure to provide adequate services in the past.7

 

7Defendants devote most of their brief to arguing that this case
is moot, invoking cases suggesting that review is unavailable for
an expired IEP, except in special circumstances, such as when the
dispute over the development and/or rejection of the IEP is
likely to be repeated in the same form in the future. None of

 -9-

 In Burlington, the Supreme Court held that courts' authority
 

to grant relief under the Act "includes the power to order school

authorities to reimburse parents for their expenditures on

private school education for a child if the court ultimately

determines that such placement, rather than a proposed IEP, is

proper under the Act." 471 U.S. at 369. In the context of the

comprehensive, and often time-consuming, review process afforded

by the IDEA, this type of equitable relief helps to secure the

child's right to a free appropriate public education, as well as
 

the parents' right to meaningful participation in the development

of a proper IEP, in accordance with the congressional intent to

provide relief that remedies deprivations of these rights. Id.
 

at 370.

 Courts of appeal in the Second, Third, Sixth, Eighth, and

Eleventh Circuits have extended the Supreme Court's rationale in

Burlington to support the award of compensatory education as
 

"appropriate relief" under the Act. See Burr v. Ambach, 863 F.2d
 

1071, 1078 (2d Cir. 1988), vacated and remanded sub nom. Sobol v.
 

Burr, 492 U.S. 902 (1989), reaff'd on reconsideration, Burr v.
 

Sobol, 888 F.2d 258 (1989); Lester H. v. Gilhool, 916 F.2d 865,
 

 

these cases reject a claim for compensatory education that is
ripe for review, and they consequently are entirely inapposite in
this context. See, e.g., Straube v. Florida Union Free School
 
Dist., 801 F. Supp. 1164 (S.D.N.Y. 1992) (noting the availability
 
of compensatory education beyond a student's 21st birthday, and
awarding compensatory education after graduation from high
school, based on challenge to expired IEP). The issue here is
not how to modify an existing inadequate IEP, but whether a
student is entitled to services to compensate for a past
deficient program.

 -10-

872-73 (3d Cir. 1990); Hall v. Knott County Bd. of Education, 941
 

F.2d 402, 407 (6th Cir. 1991); Miener v. State of Missouri, 800
 

F.2d 749, 753 (8th Cir. 1986); Jefferson County Bd. of Educ. v.
 

Breen, 853 F.2d 853, 857-58 (11th Cir. 1988).8 
 

 In likening compensatory education to the tuition

reimbursement allowed in Burlington, the Eighth Circuit reasoned
 

that "imposing liability for compensatory educational services on

the defendants `merely requires [them] to belatedly pay expenses

that [they] should have paid all along.' Here, as in Burlington,
 

recovery is necessary to secure the child's right to a free

appropriate public education." Miener, 800 F.2d at 753 (internal
 

citations omitted). Sensitive to the Act's intent to provide

free, appropriate education to all children, the Miener court
 

asserted the school district should not "escape liability for

[educational] services simply because [the parent] was unable to

provide them in the first instance . . . We are confident that

Congress did not intend the child's entitlement to a free
 

education to turn upon her parent's ability to `front' its

 

8The nature and extent of compensatory education services which
federal courts have recognized varies according to the facts and
circumstances of a given case. Such an award may include extra
assistance in the form of tutoring, see Hall v. Detroit Public
 
Schools, 823 F.Supp. 1377 (E.D. Mich. 1993), or summer school,
 
see Johnson v. Bismarck, 949 F.2d 1000 (8th Cir. 1991), while
 
students are still within the age of entitlement for regular
services under the Act, or an extended period of assistance
beyond the statutory age of entitlement, see, Lester H., 916 F.2d
 
at 873; Burr, 863 F.2d at 1078; Jefferson County Bd. of Ed., 853
 
F.2d at 857. In awarding compensatory education past the age of
entitlement, courts have directed the parties to take into
account the student's educational status and needs at the time
the relief takes effect. See Straube, 801 F. Supp. at 1181;
 
Puffer v. Raynolds, 761 F. Supp. 838, 853 (D. Mass. 1988).
 

 -11-

costs." Id. Each of the other circuits adopting this view has
 

explained its ruling in a similar fashion. 

 Although the First Circuit has not ruled explicitly whether

compensatory education is available under the Act, we have

assumed that it is. See Murphy v. Timberlane Regional School
 

Dist., 973 F.2d 13, 16 (1st Cir. 1992) (citing cases)
 

(recognizing that "every circuit which has addressed this issue

since . . . [Burlington] . . . has found that compensatory
 

education is available under the Act."). With the issue now

squarely before us, we have no difficulty in joining those

circuits that have decided that compensatory education is

available to remedy past deprivations. For the reasons

articulated by those courts, and noted above, we are persuaded

that Burlington anticipates the availability of compensatory
 

education under the IDEA. We therefore reject defendants'

suggestion that this case is moot simply because the time for

modifying the challenged IEPs has passed. If an IEP from a past

year is found to be deficient, the Act may require services at a

future time to compensate for what was lost. 

 C. Availability of Compensatory Education After Passing
 

 the Age of Entitlement
 

 Defendants argue that, notwithstanding a right to

compensatory education under the IDEA, Karl Pihl is ineligible

and this case is moot because Karl is now beyond the age of

entitlement for services under the Act. They rely on Honig, 484
 

U.S. at 318, in which the Supreme Court held that an IDEA

 -12-

challenge to a policy allowing indefinite suspension of a

disabled student for violent and disruptive conduct stemming from

his disabilities was moot as to Doe, a 24-year-old man, since he

was "no longer entitled to the protections and benefits of the

[IDEA], which limits eligibility to disabled children between the

ages of 3 and 21." Because the Act did not cover him, the Court

held, there was no reasonable likelihood that Doe again would

suffer the challenged harm. He therefore had no right to

injunctive relief against such suspensions. Id. 
 

 Defendants maintain that, like Doe, Karl Pihl is beyond the

age of entitlement and thus is ineligible for services under the

IDEA. And, like Doe, they claim, Pihl does not fall within the

exception to the mootness doctrine for conduct that is "capable

of repetition, yet evading review," see Honig, 484 U.S. at 318-23
 

(discussing "capable of repetition, yet evading review" exception

to mootness), as he ceased to be eligible for educational

services under the IDEA in 1988, when he turned 22. Lowell has

not since been, nor ever will be again, required to negotiate an

IEP for Karl.

 We find Honig inapplicable to a claim for compensatory
 

education. The Act requires a state to provide a "free

appropriate education" to every disabled child, and empowers

district courts to provide a remedy for individual handicapped

children who are deprived of that right. 20 U.S.C. 1400(c),

1412(1), 1415(e). The crucial difference between Honig and this
 

case is the nature of the relief requested. In Honig, Doe was
 

 -13-

asking the court to make the school district comply with the Act

in the future. But, because Doe was beyond the age of

entitlement for services, he had no right to demand that the

school district comply with the Act either presently or in the

future. By contrast, Karl Pihl is asking only that the court

compensate him for rights that he claims the school district

denied him in the past. See Lester H., 916 at F.2d at 872.
 

 This past term, the Supreme Court implicitly recognized this

distinction in Zobrest v. Catalina Foothills School District, 113
 

S. Ct. 2464, 246?, n.3 (1993). In Zobrest, the Court found that
 

a student's claim under the IDEA for reimbursement for services

presented a live controversy, notwithstanding the fact that he

had graduated from high school, and therefore was no longer

eligible for services under the Act. Even before Zobrest, a
 

number of circuits had held that a student who was deprived of

services to which he was entitled under the IDEA has a right to a

remedy, in the form of compensatory education, regardless of his

eligibility for current or future services under the Act. See
 

Burr, 863 F.2d at 1078; Lester H., 916 F.2d at 873; Jefferson
 

County Bd. of Ed., 853 F.2d at 857. 
 

 Common sense commands such a conclusion. In order to give

meaning to a disabled student's right to an education between the

ages of three and twenty-one, compensatory education must be

available beyond a student's twenty-first birthday. Otherwise,

school districts simply could stop providing required services to

older teenagers, relying on the Act's time-consuming review

 -14-

process to protect them from further obligations. Although

students able to front the costs of an appropriate education

later could claim reimbursement under Burlington and Zobrest,
 

absent a compensatory education award, courts would be powerless

to aid intended beneficiaries who were over twenty-one but who

had not sought out an alternative educational program. See
 

Lester H., 916 F.2d at 872; Burr, 863 F.2d at 1078. We cannot
 

believe that Congress, in establishing a disabled student's right

to public education, would allow a school district to suspend the

educational rights of such disabled eighteen- or nineteen-year-

olds without a remedy. See id. In addition, as the Eighth
 

Circuit has noted, compensatory education is consistent with

Congress' intent to channel available resources to activities and

programs that benefit disabled students. See Miener, 800 F.2d at
 

753, citing Smith v. Robinson, 468 U.S. 992, 1020 (1984),9
 

quoting 121 Cong. Rec. 19501 (1975).
 

 Thus, if Karl Pihl can prove that the school district denied

him his right to an appropriate education under the IDEA during

the challenged period, he could claim relief in the form of

compensatory education, notwithstanding the fact that he is now

twenty-seven years old.

 III. Exhaustion of administrative remedies 
 

 

9The 1986 amendments to the IDEA superseded Smith by allowing
 
pursuit of federal statutory rights and remedies outside the
IDEA, see Handicapped Children's Protection Act of 1986, P.L. 99-
 
372 3, 100 Stat. 796 (1986), but they support the congressional
language quoted in Smith.
 

 -15-

 There is no question that the IEP ordered for the 1987-1988

school year is ripe for judicial review, because the BSEA issued

a final decision upholding the Brown School placement.

Defendants maintain, however, that plaintiffs failed to raise

their claim for compensatory education for the period before June
 

1987-June 1988 at the administrative level, and that this failure

bars the court from hearing that portion of the claim. See David
 

D. v. Dartmouth School Committee, 775 F.2d 411, 424 (1st Cir.
 

1985) (since the District Court's role in an IDEA case is to

provide something short of a trial de novo, issues first must be
 

presented to the administrative hearing officer to be preserved

for judicial review). 

 Our review of the record supports plaintiffs' contrary

contention that they in fact raised this issue in a timely manner

before the administrative agency. In its January 29, 1987 order,

the BSEA explicitly deferred decision on five specific matters,

including "[w]hether service delivery pursuant to the Consent

Decree should be adjudicated inadequate and inappropriate," and

"[w]hether Karl is entitled to compensatory services for two

years following his 22nd birthday." Therefore, it is not

automatically barred from consideration. The BSEA, however,

never made a final determination on the pre-1987 time period, and

the rules regarding exhaustion of administrative remedies may

constrain the district court's evaluation of the services

provided during that time.

 -16-

 While parties ordinarily must exhaust administrative

remedies under the IDEA before initiating court action, in

certain cases, they may bypass the administrative process to seek

judicial relief. See Honig, 484 U.S. at 326-27; Smith v.
 

Robinson, 468 U.S. 992, 1014 n.17 (1984); Christopher W. v.
 

Portsmouth School Committee, 877 F.2d 1089, 1094 (1st Cir. 1989);
 

Ezratty v. Commonwealth of Puerto Rico, 648 F.2d 770, 774-75 (1st
 

Cir. 1981). Exhaustion may not be required where the pursuit of

administrative remedies would be futile or inadequate; waste

resources, and work severe or irreparable harm on the litigant;

or when the issues raised involve purely legal questions. See
 

id.10 We have also noted that exhaustion is not normally
 

required where the agency has prevented the litigant from

pursuing her claim at the administrative level. Ezratty, 648
 

F.2d at 775. 

 Plaintiffs, in effect, claim to fall within this last

exception, arguing that any failure to exhaust administrative

 

10The legislative history of the IDEA supports the view that
exhaustion is not a rigid requirement. During the debate on the
Senate Conference Report, Senator Williams, the Act's principal
author, stated that "exhaustion of the administrative procedures
established under this part should not be required for any
individual complainant filing a judicial action in cases where
such exhaustion would be futile either as a legal or practical
matter." 121 Cong. Rec. 37416 (1975), quoted in Ezratty, 648
 
F.2d at 774. Similarly, the House Report for the 1986 amendments
recited permissible exceptions to the exhaustion requirement,
including where using administrative procedures would be futile;
where an agency's policy or practice is contrary to law; and
where it is improbable that adequate relief can be obtained by
pursuing administrative remedies (e.g., the hearing officer lacks
the authority to grant the relief sought). H.R. Rep. No. 296,
99th Cong., 1st Sess. 7 (1985), quoted in Christopher W., 877
 
F.2d at 1094.

 -17-

remedies with respect to the issue of compensatory education

prior to the Brown School placement is due to the BSEA's error or

intransigence. It is not clear, however, that the agency bears

sole responsibility for this failure. The record does support

plaintiffs' claim that once the hearing officer had reserved the

issue of Karl Pihl's entitlement to compensatory education, she

never returned to it. However, in evaluating BSEA's failure to

address this issue, plaintiffs' own actions should also be

considered. See, e.g., Plaintiffs' letter accompanying motion in
 

opposition to reconsideration, dated February 17, 1987 (waiving

any determination by the BSEA at this time regarding questions

other than those relative to Karl Pihl's current appropriate

educational placement); see also supra at 6, n. 5. Moreover, it
 

is open to question whether plaintiffs could have sought an order

from the court requiring the BSEA to convene in order to resolve

the issue of plaintiffs' entitlement to compensatory education

for the earlier period. See Ezratty, 648 F.2d at 777 n.7.
 

 We believe the exhaustion issue is more appropriately

resolved by the district court, which already will be considering

the 1987-1988 IEP. We note, however, that our preliminary review

suggests that the factual record regarding Karl Pihl's

educational placement during the two years prior to the Brown

School IEP is substantially developed, and the court may not need

the "peculiar expertise of an administrative hearing officer,"

see Lester H., 916 F.2d at 425, to aid in its determination of
 

this claim. Moreover, the Act empowers courts sitting in review

 -18-

of administrative complaints to supplement the hearing record

with additional evidence at trial. See 20 U.S.C. 1415(e)(2);
 

Roland M. v. Concord School Committee, 910 F.2d 983 (1st Cir.
 

1990) (describing the thorough, yet deferential, district court

review of administrative determinations under the Act); Town of
 

Burlington v. Dept. of Educ., Comm. of Mass., 736 F.2d 773, 790
 

(1st Cir.) (same), aff'd, 471 U.S. 359 (1984); see also Rowley,
 

458 U.S. at 205. The court also may conclude that any further

delay in this already protracted litigation would serve no

purpose.

Reversed and remanded for further proceedings consistent with
 

this opinion.
 

 -19-