P.T. GILLETTE, Jr., a minor, By and Through his parents, Paul and Susan GILLETTE, Plaintiff–Appellee,

v.

FAIRLAND BOARD OF EDUCATION, Defendant–Appellant.

No. 90–3270.

United States Court of Appeals, Sixth Circuit.

Argued March 28, 1991.

Decided May 9, 1991.

Michael J. Mooney, Cincinnati, Ohio, for plaintiff-appellee cross-appellant.

Paul W. McCartney, Ralph F. Mitchell, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for defendant-appellant cross-appellee.

Before KENNEDY and RYAN, Circuit Judges, and JOINER, Senior District Judge.*

KENNEDY, Circuit Judge.

The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the Act), provides that in order to qualify for

* The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation.

federal funds for the education of children with disabilities, the states must ensure that all children with disabilities are provided with a "free appropriate public education." 20 U.S.C. § 1412(1). If a state is unable to provide an appropriate education in its own schools, then it must provide the tuition for a private education at a school which is able to provide an appropriate education. The defendant, Fairland Board of Education (defendant), appeals the District Court's summary judgment order requiring the defendant to reimburse the plaintiffs, P.T. Gillette, Jr., and his parents, Paul and Susan Gillette (plaintiffs), for amounts expended for tuition and room and board at a private school. 725 F.Supp. 343. We find that the District Court failed to give sufficient deference to the findings of the state hearing officers, and we therefore REVERSE.

I.

The plaintiff, P.T. Gillette (P.T.), who is dyslectic, is a child with a learning disability as defined by 20 U.S.C. § 1401(a)(15). P.T. attended Fairland Middle School for the fifth and sixth grades during the 1982–83 and 1983–84 school years. P.T.'s parents removed him from Fairland and enrolled him in the Phelps School for Learning Disabled Boys, a private school in Malvern, Pennsylvania, for his seventh and eighth grades during the 1984–85 and 1985–86 school years. At Phelps, P.T. was taught in small classes with boys who were at the same academic level and ability. P.T. returned to Fairland High School for the ninth grade during the 1986–87 school year. At his parents' request, P.T. attended classes with students who were not disabled throughout his ninth grade. P.T.'s work was supervised by school counselor, Linda Fizer Schneider, who coordinated P.T.'s lesson plans and reading assignments, and sent them to the Gillettes one week in advance. P.T. did not pass all of his courses.

In May 1987, the Gillettes requested a due process hearing to determine whether defendant had complied with requirements of the Act and state law. The hearing was subject to several delays, and was finally held in February 1988, after two different Individualized Education Programs (IEP) had officially been suggested by the defendant. The Act requires that the school develop for each child with a disability an IEP which outlines the goals of the child's program, and the way in which the child will be taught throughout the year. 20 U.S.C. § 1414(a)(5). The first proposed IEP involved enrolling P.T. in a vocational education program. This program, referred to as the vocational IEP, had originally been requested by the plaintiffs, but was later rejected by them because it would require P.T. to return to Fairland High School as a senior to complete his sophomore year requirements since the vocational education program is ordinarily offered only to students in the eleventh and twelfth grades. In August 1987, the defendant suggested another IEP. The August IEP proposed that P.T. be placed in learning disabled classes for all subjects except physical education, health, projects and math skills. The Gillettes, who were dissatisfied with the suggested IEP, sent a letter through their counsel (the Mooney letter) to the defendant, which suggested certain changes in the IEP. The defendant responded to that letter with counter-suggestions (the Meyers letter). Before the defendant had responded, however, the Gillettes removed P.T. from the Fairland school and enrolled him again at the Phelps School. For the most part, the Meyers letter stated that those suggestions in the Mooney letter which were not already contained in the IEP would be incorporated. The only real objection that the Meyers letter raised to the suggestions in the Mooney letter, was the proposal that P.T. be enrolled in no learning disabled (LD) classes, but instead be enrolled in modified classes for children who are not disabled.

The Impartial Due Process Hearing, which had first been requested by the Gillettes in May 1987, was held in February 1988. The Independent Hearing Officer (IHO) held that the Gillettes were not entitled to any reimbursement for any of the years in which P.T. had been enrolled at Phelps since the defendant had provided

P.T. with a free appropriate public education (FAPE) as required by the Act. The IHO found that if P.T. was to return to the Fairland school, his IEP should be based on the Mooney and Meyers letters as well as the proposed IEP drafted in August of 1987.

The Gillettes appealed that decision to the State Level Review Officer (SLRO), arguing that the Act required P.T. to be fully mainstreamed. The SLRO, however, found that the evidence clearly indicated that P.T.'s placement in general level classes, instead of skills level or learning disabled classes, was not a proper placement. The SLRO concluded that the August IEP proposal was not that dissimilar from the suggestions contained in the Meyers and Mooney letters, and that together they constituted an appropriate education for P.T. After an examination of the evidence, the SLRO concluded "that the Fairland Schools was [sic] willing and able to provide a free appropriate public education for P.T. Gillette and, therefore, the Gillette's [sic] were without legal or factual bases to justify their unilateral decision to remove P.T. from the Fairland Schools and to place him at The Phelps School in the tenth grade."

The Gillettes filed this suit in federal district court, as permitted by 20 U.S.C. § 1415, seeking reimbursement for expenses for the years that P.T. spent at the Phelps School. Following the filing of cross-motions for summary judgment, the District Court found that the August IEP lacked the maximum amount of mainstreaming as required by the Act. The Gillettes were therefore awarded reimbursement for the tuition and room and board they expended for P.T.'s tenth and eleventh grades. The District Court denied the Gillettes' request for reimbursement for all other grades.[1]

## II.

The District Court concluded that, although the academic quality of the education provided P.T. was adequate, P.T. had not been "mainstreamed" according to the requirements of the Act. The Act requires that the schools ensure that:

[T]o the *maximum extent appropriate,* children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and that special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily....

20 U.S.C. § 1412(5)(B) (emphasis added). The District Court held that because P.T. had not been fully mainstreamed, the SLRO and the IHO erred in their decisions, and the plaintiffs were entitled to reimbursement.

■ Although the District Court must review the decisions of the SLRO and IHO *de novo,* the District Court must also give due deference to the decisions of the state bodies. This Court has held "that the standard of review as set out in [*Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)] requires a de novo review but that the district court should give due weight to the state administrative proceedings in reaching its decision." *Roncker v. Walter,* 700 F.2d 1058, 1062 (6th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983). The District Court failed to give due weight to the state proceedings.

The Act requires the state to provide a free appropriate public education that "consists of educational instruction specially designed to meet the unique needs of the handicapped child." *Rowley,* 458 U.S. at 188, 102 S.Ct. at 3041. The education provided should emphasize the special education that is needed by each individual student.

The Act contemplates that such education will be provided where possible in

---

1. Originally, the District Court also granted the plaintiffs' request for reimbursement for twelfth grade expenditures, but the plaintiffs later withdrew their claim for those damages.

regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible.

*School Committee v. Department of Education*, 471 U.S. 359, 369, 105 S.Ct. at 1996, 2002, 85 L.Ed.2d 385 (1985). Both the IHO and the SLRO found that the defendant had proposed an IEP which included an academically sound program, and provided P.T. with as much interaction as possible with children who are not disabled, given his special needs. The IEP proposed that P.T. be enrolled in the learning disabled program in the language areas, in which P.T. had displayed a need for special instruction, and that he be enrolled in mainstream classes for those subjects in which he had less need for individualized instruction. The District Court, however, found that the defendant had failed to provide the education that is required under the Act because it failed to fully mainstream P.T.

■ The District Court held that the defendant was liable for the educational expenses incurred by the plaintiffs in enrolling P.T. in the Phelps school, a school attended by boys in need of special instruction and remediation. The record indicates, however, that P.T. had more of an opportunity to engage in activities with nondisabled children at Fairland School, where he would have attended several non-LD classes as well as the normal lunch hour, than at the Phelps school, in which students are placed in small classrooms according to their abilities, and all of the children attended the Phelps school because they were in need of special education or remediation. Removal of the disabled child to a private school at public expense is only contemplated under the Act when the public school is unable to provide the child with an appropriate education and the private school is able to do so. Removing a child from a partially mainstreamed program at a public school, which otherwise provides an appropriate academic instruction and the only objection to that program was a failure to fully mainstream, and placing that child in a non-main-streamed program in a private school does not satisfy the goals of the Act.

■ The defendant claims that the August IEP provided for P.T. to be in learning disabled classes in those areas in which he needed special instruction, and in non-LD classes in those subjects in which he could perform well enough to progress academically. The testimony at the hearing indicated that P.T.'s needs would be best served by mainstreaming him in only selected courses, and that for the other courses it was best for P.T. that he be taught in the LD program, where he would receive individualized attention. None of the testimony contradicts the state's determination that P.T. could not be fully mainstreamed without a detriment to both his and his classmates' education. The debate among the educators who testified was centered around how much P.T. could be mainstreamed, not whether he should be fully mainstreamed. Not one of the educators testified that P.T. could be totally mainstreamed successfully. They agreed that P.T. required a multi-sensory instruction in a small group that could be best provided by a teacher trained in educating the learning disabled. According to the record, this type of instruction could not be provided in the regular classroom setting without considerable disruption of the class, and a decreased benefit to P.T. Nothing in the record indicates that the defendant failed to provide an appropriate education that included the education of P.T. with nondisabled children "to the maximum extent appropriate." 20 U.S.C. § 1415(5)(B). The plaintiffs claim that there is nothing in the record to indicate that the Mooney letter proposals could not have been implemented. However, even if that were the case, the fact remains that the record does not support the contention that fully mainstreaming P.T. would have been the appropriate education for him, while it fully supports the IHO and SLRO's decisions concluding that the defendant had provided an appropriate education for P.T.

The IHO and SLRO's decisions are in-depth analyses of the situation, and include much of the hearing testimony. Both deci-

sions recognize that the proposals put forth by the defendant were supported by much expert testimony and that the defendant had not closed the door to any possibilities, except in recognition that the total mainstreaming experienced by P.T. in the ninth grade had resulted in his failure in some classes, and that a repeat of that situation should be avoided. The IHO and SLRO held that the Meyers and Mooney letters were not particularly dissimilar, and that they should form the foundation for a new IEP for P.T. The decisions reached by the state administrative bodies were supported by the evidence, and the District Court erred in failing to give them deference.

The decision of the District Court granting plaintiffs' motion for summary judgment is REVERSED. The case is remanded to the District Court with instructions to grant the defendant's motion for summary judgment.