USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1414 KARL PIHL, ET AL., Plaintiffs, Appellants, v. MASSACHUSETTS DEPARTMENT OF EDUCATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Barbadoro,* District Judge. ______________ ____________________ Robert G. Burdick with whom Darryl J. Dreyer and Louis Aucoin __________________ _________________ _____________ were on brief for appellants. Regina Williams Tate with whom Lorna M. Hebert was on brief for ____________________ ________________ appellees. ____________________ November 16, 1993 ____________________ ____________________ *Of the District of New Hampshire, sitting by designation. COFFIN, Senior Circuit Judge. Plaintiffs Karl and Diane _____________________ Pihl filed this lawsuit in 1987, alleging that defendants Massachusetts Department of Education, Lowell School Committee, City of Lowell and Lowell Special Education Administrator George Tsandikos denied educational services due Karl as a disabled child. They now appeal from a district court order dismissing their complaint for failure to state a claim upon which relief could be granted, presumably because moot, since the challenged educational plan had expired four years earlier, and Karl had since passed the age of entitlement for services. We conclude, after review of the authorities, that the Individuals with Disabilities Education Act (IDEA)1 empowers courts to grant a remedy in the form of compensatory education to disabled students who are beyond the statutory age of entitlement for special education services, and that Karl Pihl has alleged facts which, if proven, state a claim for relief. We therefore reverse the district court's decision to dismiss, and remand for determination of the merits of his claim. I. Factual Background2 __________________ ____________________ 1The IDEA was formerly known as the Education of the Handicapped Act (EHA). See Pub. L. 102-119, 25(b), Oct. 7, 1991, 105 Stat. ___ 607 (substituting "Individuals with Disabilities Education Act" for "Education of the Handicapped Act"). Except when reciting the history of the case, or when quoting decisions which cite to the EHA, the parties cite to the IDEA in their briefs, and we join them in doing so. 2These facts are drawn from the three volume Administrative Record filed by the parties in the district court on September 9, 1987, and the pleadings filed in this case. -2- Plaintiff Karl Pihl is a twenty-seven-year-old man who is emotionally disturbed and retarded, and who suffers from profound hearing loss and speech deficiencies. Karl began receiving special education services at the age of four, and attended a number of different programs over the years. The local school system was obligated by state and federal law to provide these services to him. See infra at 7. During the 1983 school year, ___ _____ Karl participated in a residential/educational program for multi- handicapped deaf students at the Perkins School for the Blind, but was terminated due to aggressive behavior. He was placed at the Lighthouse School, a private day facility, on an interim basis, until an appropriate residential program could be found. In June 1985, dissatisfied with the educational services Karl was receiving at the Lighthouse School, Karl's mother Diane removed him from school and kept him at home, under the care of two twenty-four hour attendants. While the Pihls paid for twenty- four hour care, the school system held his place open at the Lighthouse School, continuing to search for an appropriate program, or ways to adapt the Lighthouse School program to meet Karl's needs. In 1986, when Karl was nineteen, his mother requested a due process hearing before the Board of Special Education Appeals (BSEA) to review her claim that Karl was not receiving the educational services to which he was entitled by law. Following the hearing, held on July 15, 1986, Mrs. Pihl and the Lowell Public Schools signed a consent decree requiring the school -3- district to provide interim services to Karl while an appropriate residential placement was sought.3 The interim agreement was to end on November 30, 1986, or earlier, if Karl were placed in a residential program acceptable to his parent, or ordered by a hearing officer, or if the agreement was terminated by order of the hearing officer. The hearing officer was to retain jurisdiction, and the hearing would reconvene if Lowell had not presented a program willing to accept Karl by that date. The hearing also would reconvene at either party's request, or if Diane Pihl were to reject a proposed program. On January 28, 1987, the hearing was reconvened on plaintiffs' motion, and the Massachusetts Department of Education (DOE) was joined as a party. Plaintiffs sought an order that an appropriate program be created for Karl, because no existing appropriate educational facility had been found for him. The BSEA issued an order the next day, January 29, requiring Lowell to create a home-based program. The hearing officer also noted an agreement by the parties that Mrs. Pihl would receive monies due her from Lowell as a result of payments made pursuant to the consent decree. The BSEA deferred decision on five issues, including: whether service delivery pursuant to the consent decree should be adjudicated inadequate and inappropriate; and ____________________ 3 The consent decree specifically stated that Mrs. Pihl did not, by this agreement, admit that the interim services provided pursuant to the decree were sufficient or adequate to fulfill Lowell Public Schools' obligations under state and federal law. -4- whether Karl was entitled to compensatory services for two years following his 22nd birthday. Two weeks later, the school district filed a motion for reconsideration, indicating that it had found a residential placement for Karl at the Brown School in Austin, Texas. The same day, the plaintiffs filed this lawsuit, seeking to compel the defendants to provide Karl with an appropriate education, in accordance with the BSEA's January 29 decision. The BSEA granted the motion for reconsideration, and, following a five day hearing, ruled that the program proposed by defendants was an appropriate placement for Karl, and ordered Lowell to prepare an individualized educational program (IEP) for Karl reflecting this placement.4 On May 11, 1987, plaintiffs filed an amended complaint alleging causes of action under the Education of the Handicapped Act (EHA), 20 U.S.C. 1401-1415, and parallel provisions of Massachusetts law, Mass. Gen. L. Ch. 71B. They claimed that Karl had never been provided with an appropriate IEP; that except for ____________________ 4 The IEP is a comprehensive written statement, developed jointly by the child's parents, the school district, and, where appropriate, the child, which outlines the child's special educational needs, and the specially designed instruction and services to be provided by the school system to meet those needs. 20 U.S.C. 1401 (a)(20); 34 C.F.R. 300.340, 300.344, 300.346; 603 Code Mass. Regs. 28.314.0, 28.322.0. The IEP must be reviewed, and, where appropriate, revised, at least once a year, in order to ensure that local agencies tailor the statutorily required "free appropriate education" to each child's unique needs. Honig v. Doe, 484 U.S. 305, 311 (1988); 20 U.S.C. _____ ___ 1413(a)(1,11), 1414(a)(5); 34 C.F.R. 300.343; Mass. Gen. L. Ch. 71B, 3. -5- a few weeks of intermittent tutorial services, he had been without an IEP, or any education whatsoever, for at least two years; and that the Brown School placement was inappropriate and in violation of state law, because of its great distance from the Pihls' home, its restrictive (hospital-based) nature, and the fact that it was not approved by Massachusetts or Texas for education of the deaf, due to the lack of properly certified personnel. Plaintiffs sought a preliminary injunction requiring Lowell to maintain interim services until resolution of the dispute; an injunction against the Brown School placement that would require the defendants to provide an appropriate education in the least restrictive setting as close as possible to home; an injunction requiring compensatory education; an order for payment of out-of-pocket educational, legal, and expert expenses and costs; and all other forms of relief that the court deemed just. On May 18, 1987, the district court dismissed plaintiffs' section 1983 claim, since plaintiffs' exclusive avenue for appeal and relief was provided by the IDEA. Nearly six years later,5 on March 9, 1993, another district court judge allowed defendants' second motion to dismiss. In a margin order, the court stated that plaintiffs had failed to show "entitlement to any relief this court could properly grant." The district court did not elaborate on the reasons for its decision. It apparently ____________________ 5The case was initially set for trial on September 28, 1987, but was postponed due to the withdrawal of plaintiffs' counsel. Except for two pro se motions made by plaintiffs in 1987 and 1988, no further action was taken on this case until November 1991, when a magistrate judge convened a status conference. -6- adopted, however, the defendants' position that plaintiffs' complaint was moot because the challenged IEP had expired four years earlier, and because Karl was beyond the age of entitlement for special educational services under the IDEA.6 On this appeal, plaintiffs address only their claim for compensatory education. They contend that, if Karl demonstrates that defendants failed to provide him with appropriate educational services during the challenged period, he is now entitled to compensatory services, regardless of his age. Although they acknowledge that the BSEA has not rendered final decisions on the appropriateness of services provided during some of the contested period, they argue that they should be excused from the usual exhaustion requirement. Defendants continue to argue that this case is moot, because the challenged IEP expired over five years ago, and because Karl is beyond the age of entitlement for services under the Act. When evaluating a motion to dismiss under Rule 12(b)(6), we take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor. Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. _____ ___________________ 1992). We begin with a review of the statutory backdrop. II. Discussion __________ A. Statutory Framework ___________________ ____________________ 6The court apparently gave some significance to the earlier dismissal, noting that "defendants' earlier motion to dismiss . . . was previously allowed on May 18, 1987." That decision, however, had dismissed only the section 1983 claims. -7- The IDEA requires states, as a condition of accepting federal financial assistance, to ensure a "free appropriate public education" to all children with disabilities. 20 U.S.C. 1400(c), 1412(1). In Massachusetts, in accordance with the state's responsibility under the Act, disabled children remain eligible for special education services up to the age of twenty- two, provided they have not yet attained a high school diploma or its equivalent. Mass. Gen. Laws Ch. 71B, 1, 3. The Act imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free appropriate public education. 20 U.S.C. 1401(a)(20); 1412(2,4,5,7); 1415(a,b); Board of __________ Education of Hendrick Hudson Central School District v. Rowley, _____________________________________________________ ______ 458 U.S. 176, 182-84 (1982). These procedural safeguards "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." Honig v. _____ Doe, 484 U.S. 305, 311-12 (1987); see also Burlington School ___ ___ ____ __________________ Committee v. Mass. Dept. of Ed., 471 U.S. 359, 368 (1984). _________ __________________ The IEP is the primary safeguard, Honig, 484 U.S. at 311; _____ Burlington, 471 U.S. at 368; 20 U.S.C. 1401 (a)(20); 34 C.F.R. __________ 300.346 (1992); Mass. Gen. L. ch. 71B, 3, and parents have a right to an "impartial due process hearing" to resolve any complaints about a child's IEP. 20 U.S.C. 1415(b)(2). In Massachusetts, this function is performed by the BSEA. Mass. Gen. L. ch. 15, 1M (West Supp. 1993). The BSEA's decision is -8- reviewable in either state or federal court, which tribunal has broad discretion to grant appropriate relief. 20 U.S.C. 1415 (e)(2); see Burlington, 471 U.S. at 369. ___ __________ We now proceed with a general discussion of the availability of compensatory education under the IDEA. We next discuss the availability of this type of relief following the statutory age of entitlement. B. Availability of compensatory education under the Act ____________________________________________________ In this case, the Pihls claim that there was no appropriate IEP for substantial periods of time, beginning from a time before Karl's removal from the Lighthouse School in June 1985. They contend that the Supreme Court's decision in Burlington School _________________ Committee v. Mass. Dept. of Ed., 471 U.S. 359 (1984) establishes _________ ___________________ that a student who fails to receive appropriate services during any time in which he is entitled to them may be awarded compensation in the form of additional services at a later time. Plaintiffs claim that Karl lacked an appropriate IEP, and thus adequate educational services, beginning with the period before his removal from the Lighthouse School in 1985, and through his last school year of eligibility in 1987-1988. They claim that even though he is beyond the statutory age of entitlement, Karl is still entitled to future services to make up for the school district's failure to provide adequate services in the past.7 ____________________ 7Defendants devote most of their brief to arguing that this case is moot, invoking cases suggesting that review is unavailable for an expired IEP, except in special circumstances, such as when the dispute over the development and/or rejection of the IEP is likely to be repeated in the same form in the future. None of -9- In Burlington, the Supreme Court held that courts' authority __________ to grant relief under the Act "includes the power to order school authorities to reimburse parents for their expenditures on private school education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. at 369. In the context of the comprehensive, and often time-consuming, review process afforded by the IDEA, this type of equitable relief helps to secure the child's right to a free appropriate public education, as well as ____ the parents' right to meaningful participation in the development of a proper IEP, in accordance with the congressional intent to provide relief that remedies deprivations of these rights. Id. ___ at 370. Courts of appeal in the Second, Third, Sixth, Eighth, and Eleventh Circuits have extended the Supreme Court's rationale in Burlington to support the award of compensatory education as __________ "appropriate relief" under the Act. See Burr v. Ambach, 863 F.2d ___ ____ ______ 1071, 1078 (2d Cir. 1988), vacated and remanded sub nom. Sobol v. _____________________________ _____ Burr, 492 U.S. 902 (1989), reaff'd on reconsideration, Burr v. ____ __________________________ ____ Sobol, 888 F.2d 258 (1989); Lester H. v. Gilhool, 916 F.2d 865, _____ _________ _______ ____________________ these cases reject a claim for compensatory education that is ripe for review, and they consequently are entirely inapposite in this context. See, e.g., Straube v. Florida Union Free School ___ ____ _______ __________________________ Dist., 801 F. Supp. 1164 (S.D.N.Y. 1992) (noting the availability _____ of compensatory education beyond a student's 21st birthday, and awarding compensatory education after graduation from high school, based on challenge to expired IEP). The issue here is not how to modify an existing inadequate IEP, but whether a student is entitled to services to compensate for a past deficient program. -10- 872-73 (3d Cir. 1990); Hall v. Knott County Bd. of Education, 941 ____ _____________________________ F.2d 402, 407 (6th Cir. 1991); Miener v. State of Missouri, 800 ______ __________________ F.2d 749, 753 (8th Cir. 1986); Jefferson County Bd. of Educ. v. ______________________________ Breen, 853 F.2d 853, 857-58 (11th Cir. 1988).8 _____ In likening compensatory education to the tuition reimbursement allowed in Burlington, the Eighth Circuit reasoned __________ that "imposing liability for compensatory educational services on the defendants `merely requires [them] to belatedly pay expenses that [they] should have paid all along.' Here, as in Burlington, __________ recovery is necessary to secure the child's right to a free appropriate public education." Miener, 800 F.2d at 753 (internal ______ citations omitted). Sensitive to the Act's intent to provide free, appropriate education to all children, the Miener court ___ ______ asserted the school district should not "escape liability for [educational] services simply because [the parent] was unable to provide them in the first instance . . . We are confident that Congress did not intend the child's entitlement to a free ____ education to turn upon her parent's ability to `front' its ____________________ 8The nature and extent of compensatory education services which federal courts have recognized varies according to the facts and circumstances of a given case. Such an award may include extra assistance in the form of tutoring, see Hall v. Detroit Public ___ ____ ______________ Schools, 823 F.Supp. 1377 (E.D. Mich. 1993), or summer school, _______ see Johnson v. Bismarck, 949 F.2d 1000 (8th Cir. 1991), while ___ _______ ________ students are still within the age of entitlement for regular services under the Act, or an extended period of assistance beyond the statutory age of entitlement, see, Lester H., 916 F.2d ___ _________ at 873; Burr, 863 F.2d at 1078; Jefferson County Bd. of Ed., 853 ____ ___________________________ F.2d at 857. In awarding compensatory education past the age of entitlement, courts have directed the parties to take into account the student's educational status and needs at the time the relief takes effect. See Straube, 801 F. Supp. at 1181; ___ _______ Puffer v. Raynolds, 761 F. Supp. 838, 853 (D. Mass. 1988). ______ ________ -11- costs." Id. Each of the other circuits adopting this view has ___ explained its ruling in a similar fashion. Although the First Circuit has not ruled explicitly whether compensatory education is available under the Act, we have assumed that it is. See Murphy v. Timberlane Regional School ___ ______ ___________________________ Dist., 973 F.2d 13, 16 (1st Cir. 1992) (citing cases) _____ (recognizing that "every circuit which has addressed this issue since . . . [Burlington] . . . has found that compensatory ___________ education is available under the Act."). With the issue now squarely before us, we have no difficulty in joining those circuits that have decided that compensatory education is available to remedy past deprivations. For the reasons articulated by those courts, and noted above, we are persuaded that Burlington anticipates the availability of compensatory __________ education under the IDEA. We therefore reject defendants' suggestion that this case is moot simply because the time for modifying the challenged IEPs has passed. If an IEP from a past year is found to be deficient, the Act may require services at a future time to compensate for what was lost. C. Availability of Compensatory Education After Passing _______________________________________________________ the Age of Entitlement ______________________ Defendants argue that, notwithstanding a right to compensatory education under the IDEA, Karl Pihl is ineligible and this case is moot because Karl is now beyond the age of entitlement for services under the Act. They rely on Honig, 484 _____ U.S. at 318, in which the Supreme Court held that an IDEA -12- challenge to a policy allowing indefinite suspension of a disabled student for violent and disruptive conduct stemming from his disabilities was moot as to Doe, a 24-year-old man, since he was "no longer entitled to the protections and benefits of the [IDEA], which limits eligibility to disabled children between the ages of 3 and 21." Because the Act did not cover him, the Court held, there was no reasonable likelihood that Doe again would suffer the challenged harm. He therefore had no right to injunctive relief against such suspensions. Id. ___ Defendants maintain that, like Doe, Karl Pihl is beyond the age of entitlement and thus is ineligible for services under the IDEA. And, like Doe, they claim, Pihl does not fall within the exception to the mootness doctrine for conduct that is "capable of repetition, yet evading review," see Honig, 484 U.S. at 318-23 ___ _____ (discussing "capable of repetition, yet evading review" exception to mootness), as he ceased to be eligible for educational services under the IDEA in 1988, when he turned 22. Lowell has not since been, nor ever will be again, required to negotiate an IEP for Karl. We find Honig inapplicable to a claim for compensatory _____ education. The Act requires a state to provide a "free appropriate education" to every disabled child, and empowers district courts to provide a remedy for individual handicapped children who are deprived of that right. 20 U.S.C. 1400(c), 1412(1), 1415(e). The crucial difference between Honig and this _____ case is the nature of the relief requested. In Honig, Doe was _____ -13- asking the court to make the school district comply with the Act in the future. But, because Doe was beyond the age of entitlement for services, he had no right to demand that the school district comply with the Act either presently or in the future. By contrast, Karl Pihl is asking only that the court compensate him for rights that he claims the school district denied him in the past. See Lester H., 916 at F.2d at 872. ___ _________ This past term, the Supreme Court implicitly recognized this distinction in Zobrest v. Catalina Foothills School District, 113 _______ __________________________________ S. Ct. 2464, 246?, n.3 (1993). In Zobrest, the Court found that _______ a student's claim under the IDEA for reimbursement for services presented a live controversy, notwithstanding the fact that he had graduated from high school, and therefore was no longer eligible for services under the Act. Even before Zobrest, a _______ number of circuits had held that a student who was deprived of services to which he was entitled under the IDEA has a right to a remedy, in the form of compensatory education, regardless of his eligibility for current or future services under the Act. See ___ Burr, 863 F.2d at 1078; Lester H., 916 F.2d at 873; Jefferson ____ _________ _________ County Bd. of Ed., 853 F.2d at 857. _________________ Common sense commands such a conclusion. In order to give meaning to a disabled student's right to an education between the ages of three and twenty-one, compensatory education must be available beyond a student's twenty-first birthday. Otherwise, school districts simply could stop providing required services to older teenagers, relying on the Act's time-consuming review -14- process to protect them from further obligations. Although students able to front the costs of an appropriate education later could claim reimbursement under Burlington and Zobrest, __________ _______ absent a compensatory education award, courts would be powerless to aid intended beneficiaries who were over twenty-one but who had not sought out an alternative educational program. See ___ Lester H., 916 F.2d at 872; Burr, 863 F.2d at 1078. We cannot _________ ____ believe that Congress, in establishing a disabled student's right to public education, would allow a school district to suspend the educational rights of such disabled eighteen- or nineteen-year- olds without a remedy. See id. In addition, as the Eighth ___ ___ Circuit has noted, compensatory education is consistent with Congress' intent to channel available resources to activities and programs that benefit disabled students. See Miener, 800 F.2d at ___ ______ 753, citing Smith v. Robinson, 468 U.S. 992, 1020 (1984),9 ______ _____ ________ quoting 121 Cong. Rec. 19501 (1975). _______ Thus, if Karl Pihl can prove that the school district denied him his right to an appropriate education under the IDEA during the challenged period, he could claim relief in the form of compensatory education, notwithstanding the fact that he is now twenty-seven years old. III. Exhaustion of administrative remedies _____________________________________ ____________________ 9The 1986 amendments to the IDEA superseded Smith by allowing _____ pursuit of federal statutory rights and remedies outside the IDEA, see Handicapped Children's Protection Act of 1986, P.L. 99- ___ 372 3, 100 Stat. 796 (1986), but they support the congressional language quoted in Smith. _____ -15- There is no question that the IEP ordered for the 1987-1988 school year is ripe for judicial review, because the BSEA issued a final decision upholding the Brown School placement. Defendants maintain, however, that plaintiffs failed to raise their claim for compensatory education for the period before June ______ 1987-June 1988 at the administrative level, and that this failure bars the court from hearing that portion of the claim. See David ___ _____ D. v. Dartmouth School Committee, 775 F.2d 411, 424 (1st Cir. __ ___________________________ 1985) (since the District Court's role in an IDEA case is to provide something short of a trial de novo, issues first must be _______ presented to the administrative hearing officer to be preserved for judicial review). Our review of the record supports plaintiffs' contrary contention that they in fact raised this issue in a timely manner before the administrative agency. In its January 29, 1987 order, the BSEA explicitly deferred decision on five specific matters, including "[w]hether service delivery pursuant to the Consent Decree should be adjudicated inadequate and inappropriate," and "[w]hether Karl is entitled to compensatory services for two years following his 22nd birthday." Therefore, it is not automatically barred from consideration. The BSEA, however, never made a final determination on the pre-1987 time period, and the rules regarding exhaustion of administrative remedies may constrain the district court's evaluation of the services provided during that time. -16- While parties ordinarily must exhaust administrative remedies under the IDEA before initiating court action, in certain cases, they may bypass the administrative process to seek judicial relief. See Honig, 484 U.S. at 326-27; Smith v. ___ _____ _____ Robinson, 468 U.S. 992, 1014 n.17 (1984); Christopher W. v. ________ ______________ Portsmouth School Committee, 877 F.2d 1089, 1094 (1st Cir. 1989); ___________________________ Ezratty v. Commonwealth of Puerto Rico, 648 F.2d 770, 774-75 (1st _______ ___________________________ Cir. 1981). Exhaustion may not be required where the pursuit of administrative remedies would be futile or inadequate; waste resources, and work severe or irreparable harm on the litigant; or when the issues raised involve purely legal questions. See ___ id.10 We have also noted that exhaustion is not normally __ required where the agency has prevented the litigant from pursuing her claim at the administrative level. Ezratty, 648 _______ F.2d at 775. Plaintiffs, in effect, claim to fall within this last exception, arguing that any failure to exhaust administrative ____________________ 10The legislative history of the IDEA supports the view that exhaustion is not a rigid requirement. During the debate on the Senate Conference Report, Senator Williams, the Act's principal author, stated that "exhaustion of the administrative procedures established under this part should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter." 121 Cong. Rec. 37416 (1975), quoted in Ezratty, 648 _________ _______ F.2d at 774. Similarly, the House Report for the 1986 amendments recited permissible exceptions to the exhaustion requirement, including where using administrative procedures would be futile; where an agency's policy or practice is contrary to law; and where it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought). H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985), quoted in Christopher W., 877 __________ _______________ F.2d at 1094. -17- remedies with respect to the issue of compensatory education prior to the Brown School placement is due to the BSEA's error or intransigence. It is not clear, however, that the agency bears sole responsibility for this failure. The record does support plaintiffs' claim that once the hearing officer had reserved the issue of Karl Pihl's entitlement to compensatory education, she never returned to it. However, in evaluating BSEA's failure to address this issue, plaintiffs' own actions should also be considered. See, e.g., Plaintiffs' letter accompanying motion in ___ ____ opposition to reconsideration, dated February 17, 1987 (waiving any determination by the BSEA at this time regarding questions other than those relative to Karl Pihl's current appropriate educational placement); see also supra at 6, n. 5. Moreover, it ___ ____ _____ is open to question whether plaintiffs could have sought an order from the court requiring the BSEA to convene in order to resolve the issue of plaintiffs' entitlement to compensatory education for the earlier period. See Ezratty, 648 F.2d at 777 n.7. ___ _______ We believe the exhaustion issue is more appropriately resolved by the district court, which already will be considering the 1987-1988 IEP. We note, however, that our preliminary review suggests that the factual record regarding Karl Pihl's educational placement during the two years prior to the Brown School IEP is substantially developed, and the court may not need the "peculiar expertise of an administrative hearing officer," see Lester H., 916 F.2d at 425, to aid in its determination of ___ _________ this claim. Moreover, the Act empowers courts sitting in review -18- of administrative complaints to supplement the hearing record with additional evidence at trial. See 20 U.S.C. 1415(e)(2); ___ Roland M. v. Concord School Committee, 910 F.2d 983 (1st Cir. _________ _________________________ 1990) (describing the thorough, yet deferential, district court review of administrative determinations under the Act); Town of _______ Burlington v. Dept. of Educ., Comm. of Mass., 736 F.2d 773, 790 __________ _______________________________ (1st Cir.) (same), aff'd, 471 U.S. 359 (1984); see also Rowley, _____ ___ ____ ______ 458 U.S. at 205. The court also may conclude that any further delay in this already protracted litigation would serve no purpose. Reversed and remanded for further proceedings consistent with _________________________________________________________________ this opinion. _____________ -19-